The Honorable Karen A. Overstreet
Chapter 13
Hearing Date: December 16, 2009

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

IN RE:

GILBERT J. PLACENCIA AND ABELLA M. PLACENCIA,

Debtor(s).

Case No. 09-13286

Chapter: 13

AMENDED ORDER AUTHORIZING SALE OF PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 363(b)

THIS MATTER came before this Court upon Gilbert and Abella Placencias' ("Debtors'") *Motion to Sell Property of the Estate Under 11 U.S.C. § 363(b)*, it appearing that all interested parties have received notice to the motion filed, now therefore, it is hereby:

ORDERED, ADJUDGED and DECREED that the Debtors are hereby authorized to sell their business, Belltown Video, located at 2500 3rd Ave, Seattle, WA 98121 ("the Business"), for $30,000 to Rick Wehrheim pursuant to 11 U.S.C. § 363(b)(1) and the terms of the parties' Purchase and Sale Agreement ("PSA," attached hereto as **Exhibit A**). The proceeds of the sale shall be paid by escrow to K. Michael Fitzgerald, the Chapter 13 Trustee at Chapter 13 Trustee, PO Box 2130, Memphis TN, 38101-2139, for distribution, with the following tax warrants receiving priority payment; Washington State Department of Revenue in the amount of $10,820.03 filed with King County Superior Court under Filing Number 09-2-32788-2.

AMENDED ORDER AUTHORIZING SALE OF
PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 363(B)
(09-13286   ) - 1

SEATTLE DEBT LAW, LLC
705 SECOND AVE, SUITE 1050
SEATTLE, WASHINGTON  98104
telephone (206) 324-6677
fax (206) 447-0115

Case 09-13286-KAO    Doc 89    Filed 12/23/09    Entered 12/23/09 11:25:59    Page 1 of 2

Washington State Department of Labor and Industry in the amount of $334.60 King County Superior Court under Filing Number 09-2-39920-4, Washington State Department of Labor and Industry in the amount of $892.59 King County Superior Court under Filing Number 09-2-34184-2, and Washington State Department of Labor and Industry in the amount of $315.28 King County Superior Court under Filing Number 09-2-39922-1.

DATED this ___ day of December, 2009.

*Karen A. Overstreet*
United States Bankruptcy Judge
(Dated as of Entered on Docket date above)

Presented by:

SEATTLE DEBT LAW, LLC


　　　*/s/ Camille Nightingale*
Camille Nightingale, WSBA #40850
Christina Latta Henry, WSBA #31273
Attorney for Debtors

AMENDED ORDER AUTHORIZING SALE OF
PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 363(B)
(09-13286  ) - 2

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE, SUITE 1050
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (206) 447-0115

NWMLS Form 30  
CBA Form PS-2  
Business Opportunity P & S  
Rev. 12/99  
Page 1 of 6

© Copyright 1999  
Commercial Brokers Association  
All Rights Reserved

# BUSINESS OPPORTUNITY PURCHASE AND SALE AGREEMENT

Date: __October 7, 2009__  1

The undersigned Buyer, __Rick Wehrheim__, agrees to buy and  2
and Seller agrees to sell on the following terms, the business commonly known as __Belltown Video__  3
located at __2500 3rd Avenue__ in the City of __Seattle__  4
County of __King__, State of Washington, Zip __98121__.  5

1. **PURCHASE PRICE.** The purchase price, including the earnest money, is __Thirty Thousand and No/100 Dollars__  6
   Dollars ( __$30,000.00__ ), plus the amount paid for inventory as determined in Section 9 below, payable as follows:  7
   
   [✓] all cash at closing, including the earnest money, with no financing contingency.  8
   
   [ ] all cash at closing, including the earnest money, contingent on new financing under Section 4a below.  9
   
   [ ] _____ / _____ % of the purchase price in cash at closing, including the earnest money, with the balance of the purchase  10
   price paid as follows (check one or both, as applicable): [ ] Buyer's assumption of any underlying note and security agreements, under Section  11
   4b below; [ ] Buyer's delivery at closing of a promissory note for the balance of the purchase price, secured by the security agreement encum-  12
   bering the Property, as described in Section 4c below.  13
   
   [ ] Other: _____  14

2. **EARNEST MONEY.** Buyer agrees to deliver the earnest money of __$1,000.00__ in the form of  15
   
   [ ] Cash [ ] Personal check [✓] Promissory note [ ] Other: _____  16
   
   If the earnest money is in the form of a promissory note, it shall be due no later than:  17
   
   [ ] _____ days after mutual acceptance.  18
   
   [✓] Upon removal of the inspection contingencies in Section 8 below.  19
   
   [ ] Other: _____  20
   
   Buyer shall deliver the earnest money to and it shall be held by [ ] Selling Licensee [✓] Closing Agent, no later than:  21
   
   [ ] _____ days after mutual acceptance.  22
   
   [✓] Upon removal of the inspection contingencies in Section 8 below.  23
   
   [ ] Other: _____  24
   
   Selling Licensee may, however, transfer the earnest money to Closing Agent.  25
   If the earnest money is to be held by Selling Licensee and is over $10,000, it shall be deposited to: [ ] Selling Licensee's pooled trust account (with  26
   interest paid to the State Treasurer) [ ] A separate interest bearing trust account in Selling Licensee's name. The interest, if any, shall be credited  27
   at closing to Buyer whose Social Security or taxpayer ID Number is: _____. If this sale fails to close, whoever is  28
   entitled to the earnest money is entitled to interest.  29
   Selling Licensee shall deposit any check to be held by the Selling Licensee within 3 days after receipt or mutual acceptance, whichever occurs  30
   later. Buyer agrees to pay financing and purchase costs incurred by Buyer. If all or part of the earnest money is to be returned to Buyer and any  31
   such costs remain unpaid, Selling Licensee or Closing Agent may deduct and pay them therefrom. Unless otherwise provided in this Agreement,  32
   the earnest money shall be applicable to the purchase price and shall be non-refundable except where a condition to Buyer's obligation under this  33
   Agreement is not satisfied through no fault of Buyer.  34

3. **ASSETS PURCHASED.** This sale shall include all assets of Seller's business other than accounts receivable, cash, and the following other assets  35
   which are not included: __None__  36
   In addition to the leases, contracts and agreements assumed by Buyer pursuant to Section 8a below, this sale includes all right, title and interest of  37
   Seller to the following intangible property now or hereafter existing with the respect to the business including without limitation: all drawings, plans  38
   specifications and other architectural or engineering work product; all governmental permits, certificates, licenses, authorizations and approvals; all  39
   utility, security and other deposits and reserve accounts made as security for the fulfillment of any of Seller's obligations; any name of or telephone  40
   numbers for the business, related trademarks, service marks or trade dress; and guaranties, warranties or other assurances of performance  41
   received. Notwithstanding the foregoing, if Seller uses the trademarks, service marks, or trade dress for Seller's other businesses, then the Buyer's  42
   and Seller's obligations under this Agreement shall be conditioned on their agreement to an irrevocable, royalty-free license (excluding any portion of  43
   the purchase price allocated to the license) for the Buyer to use the marks and trade dress for the business purchased under this Agreement.  44
   
   The purchase price shall be allocated among the assets purchased in the following amounts: Real property _____  45
   equipment __$10,000.00__ ; leasehold improvements _____ ; supplies __$15,000.00__ ;  46
   noncompete _____ ; agreement _____ ; consulting agreement __$3,000.00__ ;  47
   goodwill __$2,000.00__ ; other (identify) _____.  48

INITIALS: Buyer: _____ Date: __8 OCT 09__ Seller: _____ Date: __8/09/09__  49
Buyer: _____ Date: _____ Seller: _____ Date: __8-9-2009__  50

NWMLS Form 30
CBA Form PS-2
Business Opportunity P & S
Rev.12/99
Page 2 of 6

© Copyright 1999
Commercial Brokers Association
All Rights Reserved

**BUSINESS OPPORTUNITY
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

4. **PAYMENT TERMS AND SECURITY.**

   a. **Application for New Financing.** If payment of the purchase price is contingent on Buyer obtaining new financing, then Buyer's obligation to close is conditioned upon Buyer accepting a written commitment for financing. Buyer will not reject those terms of a commitment which provide for a loan amount of at least _____ percent ( _____ %) of the purchase price, interest not to exceed _____ percent ( ____ %) per annum, a payment schedule calling for monthly payments amortized over not less than _____ ( ____ ) years, and total placement fees and points not more than _____ percent ( ____ %) of the loan amount. Buyer shall make immediate application for the commitment, pay required costs and make a good faith effort to procure such financing. This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives Seller written notice that this condition is satisfied or waived on or before _____ ( _____ ) days (60 days, if not completed) following mutual acceptance of this Agreement.

   b. **Assumption of Existing Financing.** If payment of the purchase price includes Buyer's assumption of a note and security instruments, including without limitation a UCC Fixture Filing, UCC Financing Statement, mortgage, deed of trust, or real estate contract, Seller shall promptly deliver to Buyer a copy of the underlying debt instrument(s) to be assumed, and Buyer shall be deemed to have approved all of the terms of the debt instrument(s), unless Buyer gives notice of disapproval within five (5) days after receiving such instrument(s). If any of the debt instrument(s) requires the consent of a third party to the assumption by Buyer, then Buyer shall apply for such consent within seven (7) days after receiving the debt instrument(s); upon Buyer's request, Seller shall assist Buyer by requesting the third party's consent to the assumption on Buyer's behalf. This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives Seller written notice within ( _____ ) days (30 days, if not completed) of receiving the debt instrument(s) stating that such consent is available. Buyer shall pay any assumption fees or other out-of-pocket expenses attributable to the assumption of the underlying indebtedness.

   c. **Seller Financing.** If Seller is financing a portion of the purchase price, unless different forms of debt and security instruments are attached to this Agreement, Buyer shall execute and deliver to Seller at closing: (i) LPB Form No. 28A Promissory Note and the DUE ON SALE and COMMERCIAL PROPERTY optional clauses in that form shall apply; (ii) UCC-1 Financing Statement covering the personal property subject to Seller's security interest and UCC-2 Fixture filing if fixtures are included in the sale (iii) LPB Form No. 20 Short Form Deed of Trust and CBA Form No. DTR Deed of Trust Rider if real property is included in the sale; and (iv) Washington Legal Blank, Inc., Form (WBA) UCC-1B (rev. 9/99) form security agreement. The promissory note shall bear interest at the rate of ____ % per annum, and shall be payable as follows (choose one): ☐ monthly installments of interest only, ☐ monthly installments of _____, ☐ equal monthly installments of principal and interest in an amount sufficient to fully amortize the outstanding principal balance at the stated interest rate over _____ years, ☐ other _____. Payments shall commence on the first day of the first month following the month in which closing occurs and shall continue on the same day of each succeeding month, until (choose one): ☐ _____ months from the date of closing, ☐ other _____, on which date all outstanding principal and interest shall be due. The principal shall, at Seller's option, bear all interest at the rate of _____ % per annum (18% or the maximum rate allowed by law, whichever is less, if not filled in) during any period of Buyer's default. If Seller receives any monthly payment more than _____ days (15 days if not filled in) after its due date, then a late payment charge of _____ ( ____ ) % of the delinquent amount (5% of the delinquent amount if not filled in) shall be added to the scheduled payment. Buyer shall have _____ (5 days if not filled in) after written notice to cure a default before Seller may declare all outstanding sums to be immediately due and payable.
   If the Form (WBA) UCC-1B is used, except as otherwise provided in this Agreement, it shall be completed as follows: (i) the property subject to the security agreement shall be all of the property purchased hereunder, together with all replacements, additions, and proceeds; (ii) the primary use of the property specified in Section 1 shall be "business;" (iii) the address for the location of the collateral for Section 2 shall be the address where Buyer will conduct business after closing; and (iv) Section 3 shall be completed with the legal description of the real property where Buyer will operate the business after closing.

5. **ADDENDA.** The following addenda are attached hereto and included in this Agreement: ☐ None ☑ __Consulting/Training Agreement,__ __and Trade Name Ownership Warranty, and Assignment of Lease Costs/Fees, and Addendum No. 1.__

6. **PURCHASE OF BUSINESS REAL PROPERTY.** If this sale includes the sale of commercial real estate to Buyer, the parties have attached and completed the CBA Form No. PS-2A Real Property Addendum or NWMLS Form No. 30A, or some other addendum regarding the sale of commercial real estate.

7. **LIQUOR/GAMING LICENSES.** This sale ☐ does ☑ does not (does not, if not filled in) involve the transfer of a State Liquor or Gaming License. If a State Liquor License and/or Gaming License is to be transferred as part of this sale, Buyer shall apply for such transfer(s) within 7 days of mutual acceptance of this Agreement and Seller shall cooperate with Buyer's efforts. If the transfer of either of those licenses is denied or not granted prior to closing, at Buyer's option, Buyer may terminate this Agreement prior to closing and the earnest money shall be returned to Buyer.

8. **INSPECTION CONTINGENCY.** This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives written notice to Seller within __20__ days (20 days if not filled in) of mutual acceptance of this Agreement (the "Contingency Period") stating that Buyer is satisfied with the following items a through e. If such notice is timely given, the inspection contingencies stated in this Section 8 shall be deemed to be satisfied.

   a. **Books, Records, Leases, Agreements.** Seller shall make available for inspection by Buyer or its agents as soon as possible but no later than ten (10) days after mutual acceptance of this Agreement all documents available to Seller relating to the ownership and operation of the business, including without limitation: (i) statements for utilities and personal property taxes; (ii) service contracts, franchise agreements, employment contracts, and leases or conditional sales agreements for equipment, fixtures, or other personal property; (iii) plans, specifications, permits, applications, drawings, surveys, studies, warranties and maintenance records regarding Seller's business or the property sold hereunder; (iv) books and records regarding the past performance and current financial condition of the business, including state and federal tax returns, financial statements, balance sheets, accounting records and audit reports; and (v) any lease or other agreement for use and occupancy of any premises on which all or a portion of the business is located or conducted.

INITIALS: Buyer: [signature] Date: 15 Oct 09  Seller: [signature] Date: 10/09/09
         Buyer: _____ Date: _____  Seller: [signature] Date: Oct 9, 2009

NWMLS Form 30
CBA Form PS-2
Business Opportunity P & S
Rev. 12/99
Page 3 of 6

© Copyright 1999
Commercial Brokers Association
All Rights Reserved

**BUSINESS OPPORTUNITY
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

Buyer shall determine within the Contingency Period whether it wishes and is able to assume, as of closing, all of the foregoing leases, contracts, and agreements which have terms extending beyond closing, and to determine which leases, contracts and agreements that Buyer does not wish to assume or take subject to. Buyer shall be solely responsible for obtaining any required consents to each assumption. Seller, however, shall cooperate with Buyer in securing any necessary consents. Seller shall transfer the leases, contracts and agreements as provided in Section 13 of this Agreement.

If, at or prior to the end of the Contingency Period, Buyer notifies Seller that there are certain leases, contracts or agreements that Buyer wants terminated as a condition to Buyer's purchase, Seller shall have 10 days from the date of Buyer's notice to attempt to terminate each such lease, contract or agreement on terms satisfactory to Seller. Buyer shall incur no liability for any such termination. Unless Seller notifies Buyer by the end of the 10-day period that Seller has been able to terminate each such lease, contract or agreement on terms satisfactory to Seller, this Agreement shall terminate and the earnest money shall be returned to Buyer, unless Buyer on or before the end of the 10-day period waives the termination requirement and proceeds to close.

b. **Lease of Premises by Seller.** If Seller is the owner of the premises on which all or a part of the business is located, and Buyer is not purchasing the premises as part of this Agreement, Seller shall deliver to Buyer within 10 days after mutual acceptance a proposed form of lease for the premises. Buyer and Seller shall then have until the end of the Contingency Period to agree upon a final form of lease. If Buyer and Seller cannot agree on a final form of lease by the end of the Contingency Period, then Buyer or Seller may thereafter terminate this Agreement and the earnest money shall be returned to Buyer.

c. **Employment of Key Personnel.** Buyer shall determine within the Contingency Period whether it wishes to attempt to negotiate acceptable employment contracts with any employees of Seller that Buyer wishes to hire after closing. Buyer shall not contact any employees of Seller without Seller's permission to do so. If Buyer's purchase is made contingent on hiring any employees, and Seller refuses Buyer permission to contact those employees or if Buyer cannot negotiate a mutually satisfactory agreement at least ten (10) days prior to closing with any employee that Buyer identifies during the Contingency Period, then Buyer may terminate this Agreement and receive a refund of the earnest money.

d. **Physical Inspection.** Seller shall permit Buyer and its agents, at Buyer's sole expense and risk, to enter the premises at reasonable times to conduct inspections concerning the business and premises including without limitation, the structural condition of the leasehold improvements, all mechanical, electrical and plumbing systems, equipment, hazardous materials (limited to a Phase 1 audit only), pest infestation, or other matters affecting the feasibility of the business and premises for Buyer's intended use. Buyer shall schedule any entry onto the premises with Seller in advance. Buyer shall not perform any invasive testing without obtaining the Seller's prior written consent, which shall not be unreasonably withheld. Buyer shall restore the personal property, premises and leasehold improvements to the same condition they were in prior to inspection. Buyer agrees to indemnify and defend Seller from all liens, costs, claims, and expenses, including attorneys' and experts' fees, arising from or relating to entry onto or inspection of the premises by Buyer and its agents. This agreement to indemnify and defend Seller shall survive closing. Buyer may continue to enter the premises in accordance with the foregoing terms and conditions after removal or satisfaction of the inspection contingency only for the purpose of re-sale or to satisfy conditions of financing.

e. **Schedule of Assets.** Within 10 days after mutual acceptance of this Agreement, Seller shall prepare a schedule setting forth all property to be transferred to Buyer at closing, whether real, personal, tangible, or intangible. Within 10 days after receipt of this schedule, Buyer shall approve or disapprove the schedule. If Buyer approves the schedule and Buyer and Seller have not agreed on an allocation of the purchase price in Section 3 above, then Buyer and Seller shall agree on an allocation of the purchase price among the various assets (equipment, furnishings and fixtures, goodwill, etc.). If they are unable to agree in good faith within 10 days after Buyer's written approval of the schedule, or if Buyer fails to give Seller written approval of the schedule within the 10 day period, either party may terminate this Agreement. Except as otherwise provided in this Agreement, Seller is not transferring and Buyer is not assuming any accounts payable or other liabilities of Seller, and Seller shall indemnify and hold Buyer harmless from all liabilities of Seller related to Seller's operation of the business. This agreement to indemnify and defend Seller shall survive closing.

9. **INVENTORY.** Within 10 days after mutual acceptance of this Agreement, Seller and Buyer shall agree in writing on a preliminary inventory setting forth the count and assigned unit values for all of Seller's inventory. If Seller and Buyer cannot agree on a preliminary inventory, then this Agreement shall terminate and the earnest money shall be refunded to Buyer. The inventory shall be valued at the lower of Seller's cost for any such item or the fair market value of such item. The inventory to be sold should consist only of items of quality or quantity commercially usable and saleable in the ordinary course of business. At the close of the last business day prior to closing, Seller and Buyer shall conduct a final inventory for the purpose of adjusting the inventory count (but not the assigned unit values). The final inventory count shall not exceed or be exceeded by the preliminary count by more than __10_____ % percent (ten percent if not filled in), and the final inventory value (the final inventory count per item times the assigned unit values per item) shall be added to the purchase price described in Section 1 above.

10. **EMPLOYMENT MATTERS.** Seller shall be responsible for all employment obligations of the business prior to closing, including wages, taxes, accrued vacation and sick pay, and benefits for all employees and/or contractors engaged by Seller for the business prior to closing. Unless otherwise agreed, all employees shall be terminated as of closing and Buyer shall be responsible at and after closing for only those employees or contractors that Buyer hired.

11. **OPERATIONS PRIOR TO CLOSING.** After mutual acceptance of this Agreement and until closing, Seller shall continue to operate the business in the ordinary course; shall not sell, pledge, encumber or otherwise transfer any of the property (except for inventory in the ordinary course); shall maintain the assets of the business in at least the same condition existing on the date of mutual acceptance of this Agreement, damage by casualty excluded; shall not enter into, modify, or terminate any contracts, leases or other agreements (except in the ordinary course of business), or make capital expenditures in excess of $5,000 without first obtaining Buyer's consent, which shall not be unreasonably withheld; shall not increase the compensation, benefits or distributions of any of the employees or principals of the business; and shall pay before delinquency all taxes, assessments, and other government charges regarding the business, its operations and property.

INITIALS: Buyer: _BA_____ Date: _8 Oct 09_____ Seller: _____ Date: _10/09/09_
Buyer: _____ Date: _____ Seller: _____ Date: _Oct 9, 2009_

Case 09-13286-KAO    Doc 89-1    Filed 12/23/09    Entered 12/23/09 11:25:59    Page 3 of 12

NWMLS Form 30
CBA Form PS-2
Business Opportunity P & S
Rev.12/99
Page 4 of 6

**BUSINESS OPPORTUNITY
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

© Copyright 1999
Commercial Brokers Association
All Rights Reserved

**12. POSSESSION.** Buyer shall be entitled to possession ☒ on closing ☐ _____ (on closing, if not filled in).

**13. CONVEYANCE.** Title to the tangible property shall be transferred by bill of sale unless some different method of transfer is dictated by law. Seller warrants that the title to the property shall be free of all liens and claims of any kind, except as otherwise provided in this Agreement. At closing, Seller and Buyer shall execute and deliver to Closing Agent CBA Form No. PS-AS Assignment and Assumption Agreement transferring all leases, contracts and agreements assumed by Buyer pursuant to Section 8a and all intangible property transferred pursuant to Section 3.

**14. CLOSING OF SALE.** This sale shall be closed on or before 6:00 pm o'clock on 11/01/2009, ("closing") by K. C. Celebi, Attorney ("Closing Agent"). Buyer and Seller shall, immediately on demand, deposit with Closing Agent all instruments and monies required to complete the purchase and sale in accordance with this Agreement. "Closing" shall be deemed to have occurred when all documents required to close are delivered to Closing Agent and the sale proceeds are available to Seller. Time is of the essence in the performance of this Agreement.

**15. CLOSING COSTS.** Seller and Buyer shall each pay one-half of the escrow fees. Personal property taxes payable in the year of closing, rents and other payments under assumed contracts or leases, license fees for Liquor or Gaming Licenses if closing occurs within ninety (90) days of the start of the license year, utilities, phone company charges, advertising fees, and other operating expenses shall be pro-rated as of closing. Unless otherwise agreed in writing, Buyer shall pay all costs of assuming contracts, leases and other agreements. Buyer shall reimburse Seller for lease, utility and other business-related deposits not returned to Seller at closing. Buyer shall pay all sales and/or use tax (other than real estate excise tax) arising from the transfer of the property. The commission is due on closing or upon Seller's default under this Agreement, whichever occurs first, and neither the amount nor due date thereof can be changed without the Listing Broker's written consent.

**16. RISK OF LOSS.** The risk of loss or damage to the property sold hereunder shall be Seller's until closing. Buyer may terminate this Agreement and obtain a refund of the earnest money, less any costs advanced or committed for Buyer, if improvements on the premises or the assets of the business are destroyed or materially damaged by casualty before closing, or if condemnation proceedings are commenced against all or a portion of the premises before closing.

**17. REPRESENTATIONS AND WARRANTIES OF SELLER.** Seller represents and warrants to Buyer that (i) it has the authority to sign this Agreement and complete the sale to Buyer; (ii) all books, records, leases, agreements, and other items delivered to Buyer under this Agreement are accurate and complete; (iii) Seller has complied with all local, state and federal laws, and any restrictions in its Liquor and/or Gaming Licenses in operating its business, and Seller has all required licenses, permits, certificates and authorizations needed for the conduct of its business and the use of its properties and premises; (iv) there are no liens on or claims to the property to be transferred to Buyer under this Agreement; (v) Seller knows of no litigation (pending or threatened), contract provisions, or other matters that could restrict its ability to perform hereunder or which could adversely affect Buyer's operation of the business after closing; (vi) Seller has not made any untrue statements of material fact, or omitted to state any material fact, the omission of which would be misleading to Buyer, and Seller has as of the date of this Agreement disclosed all material events, conditions and facts affecting the business, affairs and prospects of Seller and its business; (vii) Seller has title to all personal property sold to Buyer pursuant to this Agreement; and (viii) Seller has paid (except to the extent prorated at closing) all local, state, and federal taxes applicable to the business or the property sold under this Agreement, including without limitation, business and occupation taxes, social security and unemployment taxes, and worker's compensation contributions. Seller's representations and warranties shall survive closing. Seller makes no representation or warranties regarding the business or property other than those specified in this Agreement. Buyer otherwise takes the business and personal property AS IS and Buyer shall otherwise rely on its own preclosing inspections and investigations. The continued accuracy of those representations and warranties as of the closing date shall be a condition to Buyer's obligation to close this transaction, and Seller shall deliver to Buyer at closing a certificate that such representations and warranties continue to be accurate as if restated on the date of closing.

**18. HAZARDOUS SUBSTANCES.** Except as disclosed to or known by Buyer prior to the satisfaction or waiver of the inspection contingency stated in Section 8 above, Seller represents and warrants to Buyer that, to the best of its knowledge: (i) there are no Hazardous Substances (as defined below) currently located in, on, or under the premises or used in the business in a manner or quantity that presently violates any Environmental Law (as defined below); and (ii) there is no pending or threatened investigation or remedial action by any governmental agency regarding the release of Hazardous Substances or the violation of Environmental Law at the premises or by the business. As used herein, the term "Hazardous Substances" shall mean any substance or material now or hereafter defined or regulated as a hazardous substance, hazardous waste, toxic substance, pollutant, or contaminant under any federal, state, or local law, regulation, or ordinance governing any substance that could cause actual or suspected harm to human health or the environment ("Environmental Law"). The term "Hazardous Substances" specifically includes, but is not limited to, petroleum, petroleum by-products, and asbestos.

**19. INDEMNIFICATION.** Seller hereby agrees to defend and indemnify Buyer from any liability, loss, or damage (including attorneys' fees and costs of litigation) arising from or relating to Seller's breach of the foregoing representations and warranties or any of its other obligations in this Agreement. This agreement to indemnify and defend Buyer shall survive closing.

**20. COVENANT NOT TO COMPETE.** Seller, and all partners, members, shareholders, officers and directors of Seller, agree that for a period of sixty (60) months following the closing of this transaction, neither Seller nor its partners, members, shareholders, officers or directors will participate in the ownership or operation of any business that competes directly with the business sold to Buyer that is located within a radius of Five miles of any business location sold to Buyer under this Agreement. If Seller breaches this covenant, Buyer will be entitled to obtain an injunction to prevent the competitive activity, as well as to recover any money damages to which Buyer may be entitled.

**21. NOTICES AND COMPUTATION OF TIME.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including revocations of offers and counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and must be delivered to Seller and Listing Agent. A notice to Seller shall be deemed delivered only when received by Seller, Listing Agent, or the licensed office of Listing Agent. Notices to Buyer must be signed by at least one Seller and must be delivered to Buyer and Selling Licensee. A notice to Buyer shall be deemed delivered only when received by Buyer, Selling Licensee, or the licensed office of Selling Licensee. Selling Licensee, Listing Agent and their Brokers have no responsibility to advise of receipt of a notice beyond either phoning the party or causing a copy of the notice to be delivered to the party's address on this Agreement. Buyer and Seller must keep Selling Licensee and Listing Agent advised of their whereabouts to receive prompt notification or receipt of a notice.

INITIALS: Buyer: _____ Date: 8 Oct 09  Seller: _____ Date: 10/09/09
         Buyer: _____ Date: _____    Seller: _____ Date: 09-9-2009

Case 09-13286-KAO    Doc 89-1    Filed 12/23/09    Entered 12/23/09 11:25:59    Page 4 of 12

NWMLS Form 30
CBA Form PS-2
Business Opportunity P & S
Rev. 12/99
Page 5 of 6

© Copyright 1999
Commercial Brokers Association
All Rights Reserved

**BUSINESS OPPORTUNITY
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

Unless otherwise specified in this Agreement, any period of time in this Agreement shall begin the day after the event starting the period and shall expire at 5:00 pm Pacific time of the last calendar day of the specified period of time. If the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, Sunday or a legal holiday. Any specified period of five (5) days or less shall not include Saturdays, Sundays or legal holidays.

**22. MISCELLANEOUS PROVISIONS.**

  a. **Complete Agreement.** The Agreement and any addenda and exhibits to it state the entire understanding of Buyer and Seller regarding the sale of the business. There are no verbal or written agreements which modify or affect the Agreement.

  b. **Counterpart Signatures.** The Agreement may be signed in counterpart, each signed counterpart shall be deemed an original, and all counterparts together shall constitute one and the same agreement.

  c. **Facsimile and E-mail Transmission.** Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will confirm facsimile transmitted signatures by signing an original document. E-mail transmission of any document or notice shall not be effective unless the parties to the Agreement otherwise agree in writing.

**23. AGENCY DISCLOSURE.** At the signing of this Agreement,

Selling Licensee  __Gilmore Real Estate, Inc__ , __Gilmore Real Estate, Inc.__
(Insert names of Licensee and the Company name as licensed)

represented  _____Buyer_____
(Insert Seller, Buyer, both Seller and Buyer or Neither Seller nor Buyer)

and the Listing Agent __None__ , __None__
(Insert names of Licensee and the Company name as licensed)

represented  _____neither Seller nor Buyer_____
(Insert names of Licensee and the Company name as licensed)

If Selling Licensee and Listing Agent are different salespersons affiliated with the same Broker, then Seller and Buyer confirm their consent to Broker acting as a dual agent. If Selling Licensee and Listing Agent are the same person representing both parties, then Seller and Buyer confirm their consent to that person and his/her Broker acting as dual agents. If Selling Licensee, Listing Agent, or their Broker are dual agents then Seller and Buyer consent to Selling Licensee, Listing Agent and their Broker being compensated based on a percentage of the purchase price or as otherwise disclosed on an attached addendum. In addition, Seller and Buyer hereby consent to Listing Broker or Selling Broker receiving compensation from more than one party. Buyer and Seller confirm receipt of the pamphlet entitled "The Law of Real Estate Agency."

**24. ASSIGNMENT.** Buyer ☑ may ☐ may not (may not, if not completed) assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless provided otherwise in this Agreement.

**25. DEFAULT AND ATTORNEY'S FEE.** In the event Buyer fails, without legal excuse, to complete the purchase of the business, then (check one):
  ☑ that portion of the earnest money which does not exceed five percent (5%) of the purchase price shall be kept by Seller as liquidated damages (subject to Seller's obligation to pay certain costs or a commission, if any) as the sole and exclusive remedy available to Seller for such failure; or
  ☐ Seller may, at its option, (a) keep the earnest money as liquidated damages (subject to Seller's obligation to pay certain costs or a commission, if any) as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.
If Buyer or Seller institutes suit concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses. In the event of trial, the amount of the attorneys' fees shall be fixed by the court. The venue of any suit shall be the county in which the business is located as identified in the first paragraph of page 1 of this Agreement, and this Agreement shall be governed by the laws of that state.

**26. ACCEPTANCE; COUNTEROFFERS.** Seller has until midnight of __10/10/2009__ unless sooner withdrawn (if not filled in, the third business day following the last Buyer signature date below) to accept this offer. If this offer is not timely accepted, it shall lapse and the earnest money shall be refunded to Buyer. If either party makes a future counteroffer, the other party shall have until 5:00 p.m. on the __2nd__ business day (if not filled in, the second business day) following its receipt to accept the counteroffer, unless sooner withdrawn. If the counteroffer is not timely accepted or countered, this Agreement shall lapse and the earnest money shall be refunded to the Buyer. No acceptance, offer or counteroffer from the Buyer is effective until a signed copy is received by the Seller, Listing Agent or the licensed office of the Listing Agent. No acceptance, offer or counteroffer from the Seller is effective until a signed copy is received by the Buyer, Selling Licensee or the licensed office of the Selling Licensee.

INITIALS: Buyer: [signature]  Date: 8 Oct 09   Seller: [signature]  Date: 10/09/09
         Buyer: _____ Date: _____  Seller: [signature]  Date: [illegible]

NWMLS Form 30
CBA Form PS-2
Business Opportunity P & S
Rev. 12/99
Page 6 of 6

© Copyright 1999
Commercial Brokers Association
All Rights Reserved

**BUSINESS OPPORTUNITY
PURCHASE AND SALE AGREEMENT
(CONTINUED)**

27. **SELLER'S ACCEPTANCE AND BROKERAGE AGREEMENT.** Seller agrees to sell the Property on the terms and conditions herein, and further agrees to pay a commission in a total amount computed in accordance with the listing agreement. If there is no written listing agreement, Seller agrees to pay a commission of __Ten (10)__ % of the sales price or proceeds equal to the commission. The commission shall be apportioned between Listing Agent and Selling Licensee as specified in the listing agreement or any co-brokerage agreement. Seller assigns to Listing Agent and Selling Licensee a portion of the sales proceeds equal to the commission. If the earnest money is retained as liquidated damages, any costs advanced or committed by Listing Agent or Selling Licensee for Buyer or Seller shall be reimbursed or paid therefrom, and the balance shall be paid one-half to Seller and one-half to Listing Agent and Selling Licensee according to the listing agreement and any co-brokerage agreement. In any action by Listing Agent or Selling Licensee to enforce this Section, the prevailing party is entitled to reasonable attorneys' fees and expenses. Neither Listing Agent nor Selling Licensee are receiving compensation from more than one party to this transaction unless disclosed on an attached addendum, in which case Buyer and Seller consent to such compensation. If this includes the sale of real property, the Property described in attached Exhibit A, is commercial real estate. Notwithstanding Section 28 below, the pages containing this section, the parties' signatures and an attachment describing the Property may be recorded.

28. **CONFIDENTIALITY.** Until and unless a closing has been consummated, Buyer will treat all information obtained in connection with the negotiation and performance of this Agreement as confidential (except for any information that Buyer is required by law to disclose and then only after giving Seller written notice at least three (3) days prior to the disclosure), and will not use or knowingly permit the use of any confidential information in any manner detrimental to Seller.

29. **LISTING AGENT AND SELLING LICENSEE DISCLOSURE.** EXCEPT AS OTHERWISE DISCLOSED IN WRITING TO BUYER OR SELLER, SELLING LICENSEE, LISTING AGENT AND THEIR BROKERS HAVE NOT MADE ANY REPRESENTATIONS OR WARRANTIES CONCERNING THE LEGAL EFFECT OF THIS AGREEMENT, BUYER'S OR SELLER'S FINANCIAL STRENGTH, OR THE PROPERTY, INCLUDING WITHOUT LIMITATION, COMPLIANCE WITH APPLICABLE LAWS SUCH AS LAWS REGARDING ACCESSIBILITY FOR DISABLED PERSONS. SELLER AND BUYER ARE EACH ADVISED TO SEEK INDEPENDENT LEGAL AND TAX ADVICE ON THESE AND OTHER MATTERS RELATED TO THIS AGREEMENT.

Buyer _[signature]_                    Date _8 Oct 09_
Buyer _____   Date _____
Office Phone _360-658-7396_   Fax No. _____   Home Phone _____
Buyer's E-mail Address _hal@gilmorerealestate.com_
Print Buyer's Name _Rick Wehrheim_
Buyer's Address _7924 26th Avenue, NW, Marysville, WA 98271_
Selling Office _Gilmore Real Estate, Inc._                    MLS Office No. _7439_
Office Phone _425-355-8355_     Other Phone _____     Fax No. _425-355-2876_
By _[signature]_                          Print Name _Hal Gilmore_
Seller _[signature: Gilbert Placencia]_   Date _10/89/09_
Seller _____   Date _____
Home Phone _206-437-9048_   Office Phone _____   Fax No. _____
Seller's E-mail Address _gip910@live.com_
Print Seller's Name _Gilbert Placencia_
Seller's Address _2500 3rd Avenue, Seattle, WA 98121_
Listing Office _None_                             MLS Office No. _____
Office Phone _____     Other Phone _____     Fax No. _____

30. **BUYER'S RECEIPT.** Buyer acknowledges receipt of a Seller-signed copy of this Agreement, on _____
BUYER _[signature]  15 Oct 09_       BUYER _____

Form 31
Earnest Money Promissory Note
Rev. 10/98
Page 1 of 1

©Copyright 1998
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## EARNEST MONEY PROMISSORY NOTE

$1,000.00                                          Everett                     , Washington

FOR VALUE RECEIVED, Rick Wehrheim                                          ("Buyer")
agree(s) to pay to the order of  K. C. Celebi, Attorney                    ("Broker")
the sum of One Thousand and No/100 Dollars
                                                                            Dollars
($1,000.00                      ), as follows:

☐ within 3 days following mutual acceptance of the Purchase and Sale Agreement.

☑ * Upon removal of th inspection Contingencies in section 8 of the PSA      ,

This Note is evidence of the obligation to pay Earnest Money under a real estate Purchase and Sale Agreement between the Buyer and Gilbert Placencia ("Seller") dated October 7, 2009                      , Buyer's failure to pay the Earnest Money strictly as above shall constitute default on said Purchase and Sale Agreement as well as on this Note.

If this Note shall be placed in the hands of an attorney for collection, or if suit shall be brought to collect any of the balance due on this Note, the Buyer promises to pay reasonable attorneys' fees, and all court and collection costs.

Date: October 7, 2009

BUYER _____ 8 Oct 09

BUYER _____

* "On closing" or similar language is not recommended. Use a definite date.

## Addendum to Purchase and Sale Agreement

## TRADE NAME OWNERSHIP WARRANTY

Seller, Gilbert Placencia, makes an explicit warranty that's Gilbert Placencia is the sole and exclusive owner of the name Belltown Video (the Trade Name), and Seller hereby makes an explicit warranty that, the name Belltown Video is Seller's registered trademark name and the Seller is the sole and exclusive owner of the name Belltown Video.

SELLER:

Gilbert Placencia
Dba Belltown Video

By _____[signature]_____
Gilbert Placencia

Date: 10/09/09

BUYER:

Rick Wehrheim

By _____[signature]_____ 8 05 09
Rick Wehrheim

Date: _____

## Addendum to Purchase and Sale Agreement

## ASSIGNMENT OF LEASE COSTS/FEES

Buyer and Seller agree that, Seller shall pay for any fees, costs or expense associated with assignment of lease of the premises known as 2500 3rd Avenue, Seattle, WA 98121, to the Buyer

SELLER:

Gilbert Placencia
Dba Belltown Video

By _____
Gilbert Placencia

Date: 10/07/09

BUYER:

Rick Wehrheim

By _____
Rick Wehrheim

Date: 8 Oct 09

## Addendum to Purchase and Sale Agreement

## CONSULTING/TRANING AGREEMENT

Buyer and Seller agree that, Seller shall work for Buyer or his agents for a two week period as trainer without compensation or any benefits, on the premises of Belltown Video, in order to provide training to Buyer or his agents and employees for eight hours per day at the time intervals as assigned by Buyer.

SELLER:

Gilbert Placencia
Dba Belltown Video

By _____
Gilbert Placencia

Date: 10/09/09

BUYER:

Rick Wehrheim

By _____
Rick Wehrheim

Date: 8 Oct 09

Form 34
Addendum/Amendment to P & S
Rev. 5/96
Page 1 of 1

©Copyright 1996
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## ADDENDUM/AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated  October 7, 2009   1
between  Rick Wehrheim, a single person                            ("Buyer")  2
and   Gilbert Placencia                                           ("Seller")  3
concerning  Belltown Video 2500 3rd Ave., Seattle, WA 98121       ("the Property")  4

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:  5
Addendum No. 1.  6

1. Seller will not be required to pay any and all closing costs.  8

2. Seller will not be required to pay the Real Estate Commission  10

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged.  41
AGENT (COMPANY)  Gilmore Real Estate, Inc.  42
BY:  43

Initials: BUYER: _____ DATE: 15Oct09  SELLER: _____ DATE: 10/09/09  44
         BUYER: _____ DATE: _____  SELLER: _____ DATE: Oct 7, 2009  45

Form 34  
Addendum/Amendment to P & S  
Rev. 5/96  
Page 1 of 1

©Copyright 1996  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

## ADDENDUM/AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated   October 7, 2009 

between  Rick Wehrheim, a single person  ("Buyer")

and    Gilbert Placencia  ("Seller")

concerning  Belltown Video 2500 3rd Ave., Seattle, WA 98121  ("the Property")

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:

Addendum No. 3.

1. CLOSING: Closing shall ex extended to on or before December 24, 2009.

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged.

AGENT (COMPANY)   Gilmore Real Estate, Inc.

BY: _____  HAC Gilmore

Initials: BUYER:_____ DATE:_____ SELLER:_____ DATE:_____

BUYER:_____ DATE:_____ SELLER:_____ DATE:_____